UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

      v.

JUAN ALFARO,

      Defendant.
_____

15-CR-143
DECISION AND ORDER

## DECISION AND ORDER OF RELEASE PENDING TRIAL

Defendant Juan Alfaro was charged with conspiracy to possess with intent to distribute cocaine, heroin, and fentanyl in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846, and with money laundering conspiracy in violation of 18 U.S.C. § 1956(h).  Docket Item 53.

Pending before this Court is the government's motion (Docket Item 61), pursuant to 18 U.S.C. § 3145(a)(1), seeking to revoke United States Magistrate Judge Rozella A. Oliver's order that the defendant be released on conditions pending trial.

For the reasons set forth below and in accordance with 18 U.S.C. §§ 3142(e), 3142(g), and 3145(a), the government's motion is DENIED, and the defendant is ordered released on conditions pending trial.

## I. PROCEDURAL HISTORY

On August 8, 2016, Alfaro was arrested and arraigned in the Central District of California, and United States Magistrate Judge Rozella A. Oliver held a detention hearing in that district. Without objection, both sides proceeded by proffer. After finding that Alfaro rebutted the presumption that no condition or combination of conditions would reasonably assure his appearance or the safety of the community, *see generally* 18 U.S.C. § 3142(e)(3), Judge Oliver ordered that Alfaro be released on conditions pending trial. She also temporarily stayed her order to permit the government to appeal.

The following day, on August 9, 2016, the government moved, under 18 U.S.C. § 3145(a)(1), to revoke Judge Oliver's order. *See* Docket Items 59. This Court then stayed Alfaro's release pending his appearance in this district. *See* Docket Item 60. Counsel for the defendant filed a response to the government's motion. *See* Docket Item 90.

On August 12, 2016, the government filed supplemental papers in further support of its motion to revoke Judge Oliver's order. Docket Item 69. Due to circumstances outside the control of this Court, Alfaro, who was in the custody of the United States Marshal Service as a result of the stay, did not appear in the Western District of New York until September 7, 2016.[1]

---

[1] The Court was advised by counsel for the parties and by the United States Marshal Service that travel from the Central District of California was restricted due to wildfires in California in August 2016.

2

On September 7, 2016, Alfaro appeared with counsel in the Western District of New York, and this Court heard oral argument on the government's motion.

This Court has reviewed all the papers, exhibits, and evidence submitted by both sides regarding the pretrial detention or release of the defendant, including the transcript of the detention hearing before Judge Oliver.

## II. APPLICABLE LAW

### A. The Motion

The government moves under 18 U.S.C. § 3145(a) ("Review of a release order"), which provides:

> If a person is ordered released by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—
>
> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release; and
>
> (2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.
>
> The motion shall be determined promptly.

18 U.S.C. § 3145(a).

### B. Standard of Review

"A district court reviews *de novo* a magistrate judge's order of pretrial release or detention." *United States v. Minnici*, 128 F. App'x 827, 828 n.1 (2d Cir. 2005) (Summary Order) (citing *United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Sierra,* No. 99 Cr. 962, 1999 WL 1206703, at *1 (S.D.N.Y. Dec. 16, 1999)).

When conducting this *de novo* review, "the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Parker*, 65 F. Supp. 3d 358, 362 (W.D.N.Y. 2014) (quoting *United States v. Marra,* 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001)).  In this case, the government attached additional evidence to its motion papers, and the defendant attached additional evidence to his responding papers.

**C. Pretrial Detention**

"If, after a hearing pursuant to [18 U.S.C. § 3142(f)], the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial."  18 U.S.C. § 3142(e)(1).

In determining pretrial detention or release, the court is to consider the following factors:

(1) the nature and circumstances of the offense charged . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

>    (4) the nature and seriousness of the danger to any person or the
>    community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Judicial findings under the statute require different standards of proof. A finding "that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence," 18 U.S.C. § 3142(f); on the other hand, a finding that a defendant poses a risk of flight may be supported by only a preponderance of the evidence. *See United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011). But neither finding needs to be supported by testimony under oath, as it "is well established in [the Second Circuit] that proffers are permissible both in the bail determination and bail revocation contexts." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000).

Here, because a grand jury charged the defendant with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." *See* 18 U.S.C. § 3142(e)(3). The Second Circuit recently summarized the effect of this presumption:

>    Such a presumption shifts to the defendant "a limited burden of
>    production—not a burden of persuasion" to adduce "evidence that he does
>    not pose a danger to the community or a risk of flight." *United States v.
>    Mercedes,* 254 F.3d 433, 436 (2d Cir. 2001). Such production does not
>    eliminate the presumption; rather, the presumption "remains a factor to be
>    considered among those weighed by the court," . . . "however, the
>    government retains the ultimate burden of persuasion." *United States v.
>    English,* 629 F.3d at 319 (internal quotation marks omitted).

*United States v. Artis*, 607 F. App'x 95, 96–97 (2d Cir. 2015) (Summary Order).

## II. FINDINGS AND CONCLUSIONS

Like Judge Oliver, the United States Probation Officers in both the Central District of California and the Western District of New York view the defendant as posing neither a risk of nonappearance nor a danger to the community. *See, e.g.*, Docket Item 69-7 at 6. The government concedes that Alfaro does not pose a danger and argues that Judge Oliver erred in not detaining Alfaro only because of his risk of flight.

The government's position in this regard differs from the position it took with respect to Alfaro's co-defendant, Herman Aguirre. There, the government suggested that Aguirre did pose a danger to the community. For example, in its motion to detain Aguirre – a motion this Court granted – the government proffered evidence that Aguirre was involved in threatening individuals in connection with the drug organization that he headed. Here, there are no such allegations; indeed, as noted above, the government concedes that Alfaro poses no such danger. For that reason, this Court will address only the factors that involve risk of flight.

### A. Nature and Circumstances of the Offense

As noted above, the nature of the charge in this case – a drug charge with at least a ten-year maximum – creates a statutory presumption in favor of detention that remains a factor for the district court to weigh even after the defendant has met his burden of production rebutting that presumpion. *See Artis*, 607 F. App'x at 96-97. As this Court has noted in its decision to detain Alfaro's co-defendant Herman Aguirre, very large quantities of suspected controlled substances were seized in connection with this

6

matter. But as the government's organizational chart suggests, Aguirre is alleged to have been at the top of the conspiracy, while Alfaro allegedly was connected only to the money involved, not to the narcotics. *See* Docket Item 69-3 at 2. Even so, this factor still weighs in favor of Alfaro's detention, albeit not as heavily as it did with respect to Aguirre.[2]

**B. Weight of the Evidence**

The government charges that Alfaro was involved in a large-scale drug money laundering operation that involved over $19 million. In the Superseding Indictment, the government alleges that the laundered money was the proceeds of a significant cocaine and heroin narcotics conspiracy. At Alfaro's hearing in California, however, the government suggested that "the substance of [the money laundering] really involves approximately $6 million in an account in Buffalo believed to be the proceeds of cocaine and heroin distribution . . . ." Docket Item 69-1 at 12. And the government maintains that Alfaro succeeded in laundering the money by running a seafood business that acted as a "front" to conceal the drug conspiracy's ill-gotten gains.

But aside from the financial records apparently obtained from the Internal Revenue Service and Bank of America, *see* Docket Item 69 at 6, the government does

---

[2] The defendant's case is factually distinct from Aguirre's in several other ways as well. For example, although the government claimed that Aguirre was involved in money laundering of up to $19 million, Docket Item 46 at 5-6, it has suggested that Alfaro was involved in a smaller slice of the laundering pie—around $6 million. *See* Docket Item 69-1 at 12. Further, while Aguirre is alleged to have taken only day trips to Mexico, explaining some of those trips as being for "dental work," Docket Item 44 at 8, Alfaro's trips to Mexico appear to be legitimately grounded in his business of over twenty years. Indeed, during at least one of these trips, Alfaro appears to have been accompanied by other vendors in the seafood industry. *See* Docket Item 97.

7

not proffer anything other than the Superseding Indictment and the organizational chart purporting to connect Alfaro to the drug conspiracy. Those unexplained financial records refer to Alfaro as having signed checks and debit slips, some for substantial amounts of money, but they do not otherwise connect him to his co-defendants or to the drugs.

What is more, Alfaro has been aware that he was the target of a serious drug conspiracy since at least September 2015, but he has not tried to run and hide from prosecution. More specifically, on September 14, 2015, Alfaro received a letter informing him that the government had "evidence that [he had] violated federal criminal law" and was contemplating "potential felony charges" against him. Docket Item 90 at 6. Since that time, Alfaro has made at least some efforts to cooperate with the authorities and responded to a grand jury subpoena; even more significantly, he did not try to run from prosecution. *See id.* at 2-3, 8-10. This record of behavior suggests that Alfaro is not a flight risk.

Although it is difficult at this early stage to determine the strength of the government's case against Alfaro, the fact that Alfaro has known of potential, serious criminal charges against him for almost a year and has not run weighs in favor of his release.

**C. History and Characteristics of the Person**

It is undisputed that Alfaro has a family and property in California; in fact, he has lived in the Central District of California for thirty-three years, he has immediate and

extended family there, and he owns and operates a company there.  *See* Docket Item 69-7 at 3-4.  According to the Pretrial Services Report, he has a fifteen year-old misdemeanor conviction for which he was a sentenced to a fine, restitution, and probation, but he has no other criminal record.  *See id.* at 4-5.  The Pretrial Services Report also notes that "[t]he defendant is in good physical and mental health and does not consume any illegal substances."  *Id.* at 4.

The defendant does have an extensive history of travel to Mexico; for example, the records show that he took about four trips to Mexico in 2016, one trip in 2015, and five trips in 2014.  *See* Docket Item 69-4.  That is some cause for concern notwithstanding his attorney's representation that the trips were in connection with the defendant's legitimate seafood business.  But whenever serious charges are pending against a defendant, there is always *some* risk of flight. *See* Docket Item 69-1 at 23-2 (Alfaro's counsel acknowledging this risk).  Here, the surrender of the defendant's international travel documents, his strong ties to California, and his pattern of behavior since learning of the potential criminal charges against him mitigate Alfaro's risk of flight.

## **CONCLUSION**

For all the above reasons, this Court agrees with United States Magistrate Judge Oliver, Pretrial Services Officer Judith M. Glasco in the Central District of California, and Probation Officer Melissa S. Linton in the Western District of New York that the conditions imposed on the release of the defendant reasonably ensure his appearance in court and the safety of the community.

Those conditions include a $40,000.00 appearance bond, as well as:

- Surrender passport/passport card to the Clerk of the Court. Surrender other international travel documents to appropriate authorities;

- Travel restricted to: CDCA and WDNY, unless court permission is granted to travel elsewhere;

- Remain at a verifiable address;

- Maintain or actively seek employment and provide proof to Pretrial Services. If you seek new employment it must first be approved by Pretrial Services;

- Avoid contact, directly or indirectly, with any person who is a known victim or witness in the pending criminal matter;

- Avoid contact, directly or indirectly, with any co-defendant in the pending criminal matter with the exception of in the presence of counsel;

- Refrain from use or unlawful possession of narcotic drugs unless prescribed, including state-authorized marijuana; and

- Comply with the previous conditions, the defendant shall submit to a search of person and or property by Pretrial Services in conjunction with the U.S. Marshal Service.

*See* Docket Item 67.

The government's motion to revoke the Order Setting Conditions of Release entered by United States Magistrate Judge Rozella A. Oliver in the Central District of California on August 8, 2016, is therefore DENIED.

    SO ORDERED.

Dated:  September 9, 2016
         Buffalo, New York

                        *s/Lawrence J. Vilardo*
                        LAWRENCE J. VILARDO
                        UNITED STATES DISTRICT JUDGE